# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BAYMONT FRANCHISE SYSTEMS, INC.,** | Civ. No. 2:13-5796 |
| **Plaintiff,** | (KM)(MAH) |
| **v.** | |
| **SHREE HANUMAN, INC. et al.,** | **OPINION** |
| **Defendants.** | |

**KEVIN MCNULTY, U.S.D.J.:**

This matter comes before the Court on the unopposed motion of Plaintiff Baymont Franchise Systems, Inc. ("Baymont") for default judgment against Defendants Shree Hanuman, Inc. ("Hanuman"), Gurraj Grewal ("Grewal"), and Rekha M. Zaveri ("Zaveri"), pursuant to Fed. R. Civ. P. 55(b)(2). (ECF No. 10). This action arises from a breach of contract dispute. For the reasons set forth below, I will enter a default judgment in the amount of $175,201.81, plus post-judgment interest from this date at the appropriate rate pursuant to 28 U.S.C. § 1961.

## I.   BACKGROUND

### a. The Agreement

Baymont is a Delaware corporation with its principal place of business in Parsippany, New Jersey. (Compl. ¶1, ECF No. 1). Hanuman is a Georgia corporation with its principal place of business in Goodlettsville, Tennessee. (*Id.* ¶2). Zaveri and Grewal are principals of Hanuman and citizens of Tennessee. (*Id.* ¶¶3–4).

On or about November 1, 2007, Baymont entered into a Franchise

Agreement ("Agreement") with Hanuman. (*Id.* ¶9 (citing Ex. A)). Hanuman was authorized to operate a 70-room Baymont guest lodging facility located at 809 Wren Road, Goodlettsville, Tennessee 37072, Site No. 4343-72505-02 ("Facility"). (*Id.*).

Under the Agreement, Hanuman was obligated to operate the Facility for a twenty-year term and to make periodic payments to Baymont for "royalties, system assessments, taxes, interest, and other fees" ("recurring fees"). (*Id.* ¶¶10–11). Hanuman was required to pay interest "on any past due amount . . . at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid." (*Id.* ¶12).

The Agreement also required Hanuman to submit monthly reports to Baymont disclosing, *inter alia*, "the amount of gross room revenue earned by Shree Hanuman at the Facility in the preceding month for purposes of establishing the amount of royalties and other Recurring Fees due to [Baymont]." (*Id.* ¶13). Hanuman was to maintain accurate "financial information, including books, records, and accounts," and allow Baymont to "examine, audit, and make copies" of these records. (*Id.* 14).

Section 11.2 outlines the circumstances under which Baymont could terminate the Franchise Agreement, including

> (1) [failure to] cure a default as provided in Section 11.1 [requiring payment within 30 days of written notice] . . .
> (7) [failure to] pay debts as they arise in the ordinary course of business . . .
> (9) [receipt of] two or more notices of default from [Baymont] in any one year period (whether or not you cure the defaults)

(*Id.* Ex. A at 14; ¶15).

In the event of a termination, Hanuman was required to pay liquidated damages to Baymont, which were set at $1,000 per guest

room in the Facility. (*Id.* ¶¶16–17). In the event of litigation, the losing party was required to pay "all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party." (*Id.* ¶18).

Zaveri and Grewal provided Baymont with a Guaranty of Hanuman's obligations under the Franchise agreement, effective as of the date of the Franchise Agreement. (*Id.* ¶19 (citing Ex. B)). The Guaranty required Zaveri and Grewal, upon a default under the Franchise Agreement, to "immediately make each payment and perform or cause Franchisee to perform, each unpaid or unperformed obligation of Franchisee under the [Franchise] Agreement." (*Id.* ¶20 (quoting Ex. B)). Because the Franchise Agreement required the losing party at litigation to pay the other party's costs, the Guaranty made Zaveri and Grewal personally responsible for these costs as well. (*Id.* ¶21).

### b.   *The alleged defaults and termination*

Baymont alleges that Hanuman repeatedly breached its obligation to pay recurring fees under the Franchise Agreement, beginning in 2011. (*Id.* ¶22).

On September 15, 2011, Baymont sent a letter informing Hanuman that it was in default of the Franchise Agreement, that it owed Baymont $27,298.54 in unpaid recurring fees, and that it had 10 days to cure this default or else the Franchise Agreement might be subject to termination. (*Id.* ¶23 (citing Ex. C)).

Baymont sent a second letter on March 29, 2012, informing Hanuman that it was in default of the Franchise Agreement, that it now owed Baymont $47,831.61 in unpaid recurring fees, and that it had 30 to cure this default or else the Franchise Agreement might be subject to termination. (*Id.* ¶24 (citing Ex. D)).

In a third letter dated April 30, 2012, Baymont informed Hanuman that it was terminating the Franchise Agreement and that Hanuman was

required to pay Baymont $70,000 in liquidated damages for the premature termination as well as all unpaid recurring fees through the date of the termination. (*Id.* ¶25 (citing Ex. E)).

Baymont now seeks a judgment against Hanuman, Zaveri, and Grewal, jointly and severally, awarding various remedies provided for in the Franchise Agreement. Specifically, Baymont seeks: (1) liquidated damages in the amount of $70,000; (2) prejudgment interest on liquidated damages in the amount of $26,545.88; (3) recurring fees in the amount of $74,176.97 (principal plus prejudgment interest); and (4) attorneys' fees and costs in the amount of $4,482.30. (*See* ECF No. 10-1, Proposed Order).

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as the parties are diverse and the amount in controversy exceeds $75,000.

Hanuman, Zaveri and Grewal have all consented "to the non-excusive personal jurisdiction of and venue in the New Jersey state courts situated in Morris County, New Jersey and the United States District Court for the District of New Jersey." (*Id.* ¶6; Ex. A, Section 17.6.3; Ex. B).

## II.   DISCUSSION

### a.  Legal Standard for Entry of Default Judgment

"[T]he entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). Because the entry of a default judgment prevents the resolution of claims on the merits, "this court does not favor entry of defaults and default judgments." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984). Thus, before entering default judgment, the Court must determine whether the "unchallenged facts

constitute a legitimate cause of action" so that default judgment would be permissible. *DirecTV, Inc. v. Asher*, 03-cv-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing Wright, Miller, Kane, 10A Federal Practice and Procedure: Civil 3d § 2688, at 58–59, 63).

"[D]efendants are deemed to have admitted the factual allegations of the Complaint by virtue of their default, except those factual allegations related to the amount of damages." *Doe v. Simone*, CIV.A. 12-5825, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013). While "courts must accept the plaintiff's well-pleaded factual allegations as true," they "need not accept the plaintiff's factual allegations regarding damages as true." *Id.* (citing *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008)). Moreover, if a court finds evidentiary support to be lacking, it may order or permit a plaintiff seeking default judgment to provide additional evidence in support of the allegations. *Doe*, 2013 WL 3772532, at * 2.

Before a court may enter default judgment against a defendant, the plaintiff must have properly served the summons and complaint, and the defendant must have failed to file an answer or otherwise respond to the complaint within the time provided by the Federal Rules, which is twenty-one days. *See Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 18–19 (3d Cir. 1985); Fed. R. Civ. P. 12(a).

After the prerequisites have been satisfied, a court must evaluate the following three factors: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)).

### b. Analysis

#### i. *Adequate Service & Defendants' Failure to Respond*

The prerequisites for default judgment have been met, as Hunuman, Zaveri, and Grewal have been properly served, and each has failed to file an answer or otherwise respond to the Complaint within twenty-one days pursuant to Fed. R. Civ. P. 12(a). The clerk entered default on March 5, 2014.

Service of Hanuman, a corporate entity, may be made by delivering a copy of the summons and complaint to "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process" or by following state law for serving a summons in an action brought in courts of general jurisdiction where the district court is located or where service is made. Fed. R. Civ. P. 4(h)(1). New Jersey law states in relevant part that service on a corporation may be made:

> by serving a copy of the summons and complaint . . . on any officer, director, trustee or managing or general agent, or any person authorized by appointment or by law to receive service of process on behalf of the corporation, or on a person at the registered office of the corporation in charge thereof, or, if service cannot be made on any of those persons, then on a person at the principal place of business of the corporation in this State in charge thereof, or if there is no place of business in this State, then on any employee of the corporation within this State acting in the discharge of his or her duties.

N.J. Ct. R. 4:4-4(a)(6).

Service of the individual defendants, Grewal and Zaveri, may be made under the Federal Rules by

> doing any of the following:

> (A) delivering a copy of the summons and of the complaint to the individual personally;

> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e)(2). Service may also be made by following state law for serving a summons in an action brought in courts of general jurisdiction where the district court is located or where service is made. Fed. R. Civ. P. 4(e)(1). The New Jersey rule for serving individuals mirrors the Federal Rule. See N.J. Ct. R. 4:4-4(a)(1).

If, despite diligent efforts, personal service cannot be made in accordance with N.J. Ct. R. 4:4-4(a)(1), *in personam* jurisdiction may be obtained over any defendant by substituted or constructive service, in accordance with N.J. Ct. R. 4:4-4(b)(1)(C) by:

> mailing a copy of the summons and complaint by registered or certified mail, return receipt requested, and, simultaneously, by ordinary mail to: (1) a competent individual of the age of 14 or over, addressed to the individual's dwelling house or usual place of abode; (2) a minor under the age of 14 or a mentally incapacitated person, addressed to the person or persons on whom service is authorized by paragraphs (a)(2) and (a)(3) of this rule; (3) a corporation, partnership or unincorporated association that is subject to suit under a recognized name, addressed to a registered agent for service, or to its principal place of business, or to its registered office.

"If service can be made by any of the modes provided by this rule, no court order shall be necessary." N.J. Ct. R. 4:4-4(b)(3).

After making diligent efforts to personally serve Hanuman, Zaveri, and Grewal, and failing to locate any persons on whom the Complaint and Summons could be served, Baymont served each with a copy of the Summons and Complaint on January 24, 2014 via certified and regular mail, as required by N.J. Ct. R. 4:4-4(b)(1)(C). (Couch Cert. ¶¶3–7, Affidavits of Diligent Efforts, Ex. A–D, ECF No. 6). On March 5, 2014, the

Clerk of the Court entered the default of Hanuman, Zaveri, and Grewal for failure to plead or otherwise defend within the twenty-one day time period provided by Fed. R. Civ. P. 12(a).

The Defendants were properly served and have failed to respond to the Complaint. Defendants' time to respond to the Complaint has long since expired. The clerk has entered default. Accordingly, I am satisfied that the prerequisites to filing a default judgment are met. *See Gold Kist, Inc.*, 756 F.2d at 18–19.

### ii. *Gold Kist factors*

I must now evaluate the following three factors: (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default. *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)).

#### 1. Meritorious defense (*Gold Kist* factor 1)

As to the first factor, my review of the record reveals no suggestion that Baymont's claims are legally flawed or that there is a meritorious defense to them. *See Doe*, 2013 WL 3772532, at *5. Accepting the factual allegations as true, I find that Baymont has stated a claim for breach of the Franchise Agreement and the Guaranty.

Under New Jersey law, "[t]o state a claim for breach of contract, [a plaintiff] must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007).[1]

---

[1]   Pursuant to Section 17.6 of the Franchise Agreement (and the Guaranty that incorporates Section 17 of the Franchise Agreement), New Jersey law

8

I am satisfied that Baymont has set forth a sufficient claim for breach of contract, and I cannot, from the limited materials before me, see any meritorious defense. Baymont has shown the existence of two valid contracts—the Franchise Agreement and the Guaranty. Baymont has alleged facts demonstrating that Hanuman, Zaveri, and Grewal are bound by the Franchise Agreement and Guaranty; that they are obligated to pay recurring fees; that their failure to pay recurring fees or cure their default caused the termination of the contract; and that this breach caused Baymont to incur damages. There are no facts indicating that Baymont breached any of its obligations under either the Franchise Agreement or Guaranty.

Therefore, I cannot discern any meritorious defenses to Baymont's allegations.

> 2. Prejudice suffered by party seeking default & culpability of the parties subject to default (*Gold Kist* factors 2, 3)

The second and third factors also weigh in favor of default. Hanuman, Zaveri, and Grewal were properly served on January 24, 2014, over a year ago, but have failed to appear and defend themselves in any manner. *See Teamsters Pension Fund of Philadelphia & Vicinity v. Am. Helper, Inc.*, CIV. 11-624 JBS/JS, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011) (finding that "Plaintiffs have been prejudiced by the Defendants' failure to answer because they have been prevented from prosecuting their case, engaging in discovery, and seeking relief in the normal fashion."). Absent any evidence to the contrary, "the Defendant[s'] failure to answer evinces the Defendant[s'] culpability in [the] default. *Id.* And "[t]here is nothing before the Court to show that the Defendant[s'] failure to file an answer was not willfully negligent." *Id.* at *4 (citing

---

applies in this diversity action. (Compl. Ex. A at 21, Ex. B).

*Prudential Ins. Co. of America v. Taylor*, No. 08–2108, 2009 WL 536403, at *1 (D.N.J. Feb. 27, 2009) (finding that when there is nothing before the court to suggest anything other than that the defendant's willful negligence caused the defendant to fail to file an answer, the defendant's conduct is culpable and warrants default judgment)).

The only possible conclusion based on the record is that Hanuman, Zaveri, and Grewal culpably breached their obligations under the Franchise Agreement and the Guaranty, and that Baymont was prejudiced as a result. Accordingly, I find that the entry of a default judgment is appropriate.

### c. Remedies

Baymont seeks four specific types of compensation, totaling $175,205.15: (1) liquidated damages in the amount of $70,000; (2) prejudgment interest on liquidated damages in the amount of $26,545.88; (3) recurring fees in the amount of $74,176.97 (principal plus prejudgment interest); and (4) attorneys' fees and costs in the amount of $4,482.30. (*See* ECF No. 10-1, Proposed Order). Baymont has submitted documentary evidence in support of its demands, while Hanuman, Zaveri, and Grewal have, obviously, submitted nothing. An *ex parte* hearing would serve little additional purpose, so I rule based on the record before me.

I will partially grant Baymont's request for recurring fees, as set forth in Section 7, Section 18.4, and Schedule C of the Franchise Agreement. (Compl. ¶11).[2] Baymont has documented recurring fees in

---

[2]     Baymont's request includes an invoice from May 22, 2012, which is after the April 30, 2012 termination notice. (*See* Fenimore Aff. Ex. E, F). Because liquidated damages exist to compensate Baymont for any future lost fees (Fenimore Aff. ¶22), Baymont may only recover whatever recurring fees were unpaid as of the date of termination of the contract. Otherwise, the liquidated damages and recurring damages amounts would be duplicative in part.

the amount of $74,173.63, which includes interest at a rate of 1.5% calculated through May 22, 2014. (*See* Fenimore Aff.[3] ¶20 (citing Ex. F (itemized statement of recurring fees))).

I will also grant Baymont's request for liquidated damages. Baymont's request for $70,000 is based on Sections 12.1 and 18.5 of the Franchise Agreement (setting liquidated damages at $1,000 multiplied by the number of guest rooms), and Section 7.3 establishing a 1.5% interest rate on all unpaid sums). (Compl. Ex. A). The liquidated damages rate of $1,000 multiplied by 70 guest rooms yields a figure of $70,000 under the Agreement. (Fenimore Aff. ¶¶25–26). I agree with Baymont that the contractual interest rate of 1.5% monthly applies to this liquidated damages sum. (Compl. Ex. A, Section 7.3). I also agree as to the date liquidated damages began to accrue: May 30, 2012, or 30 days after Baymont sent a letter of termination. (Fenimore Aff. ¶27, Ex. E (Termination Letter)). Interest thus equals $26,545.88.

The interest is calculated from May 30, 2012 through March 31, 2015, the date of this decision. The $26,545.88 figure is calculated by multiplying $70,000 by 18% per year, which equals $12,600 in interest per year. That amount is then divided by 365 days to equal $34.52 in interest per day. When the per diem interest of $34.52 is multiplied by 769 days, the interest owed is $26,545.88. (*See* Fenimore Aff. ¶27).

Finally, as to attorneys' fees and costs, I adopt Baymont's analysis. Baymont has adequately documented its attorneys' fees, which do not seem unreasonable or disproportionate. (*See* Compl. Ex. A, Franchise Agreement, Section 17.4 (giving prevailing party the right to recover

---

Therefore, I will subtract $3.34 (the May 22, 2012 invoice amount) from Baymont's recurring fees amount.

[3]    The Affidavit of Suzanne Fenimore, dated June 2, 2014, submitted in support of Baymont's motion for final judgment by default (ECF No. 10-3) = Fenimore Aff.

reasonable attorneys' fees); Fenimore Aff. ¶28; Couch Cert.[4] ¶¶13–14, Ex. F). I will enter a judgment that includes $3,900.00 in attorneys' fees and $582.30 in costs, for a total of $4,482.30.

## III.   CONCLUSION

For the foregoing reasons, a default judgment will be entered in favor of Plaintiff Baymont Franchise Systems, Inc., in a total amount of $175,201.81, to be paid to Baymont, along with post-judgment interest from this date at the appropriate rate pursuant to 28 U.S.C. § 1961.

An appropriate order will be entered in accordance with this Opinion.

Dated: March 30, 2015

_____
**Kevin McNulty**
**United States District Judge**

---

[4]     The Certification of Bryan P. Couch, dated June 13, 2014, submitted in support of Baymont's motion for final judgment by default (ECF No. 10-2) = Couch Cert.